COMMONWEALTH *vs.* LUKE K. BLAIR & another.

Hampshire.     October 5. — 19, 1877.     ENDICOTT & LORD, JJ., absent.

On the trial of an indictment for procuring an abortion, there was evidence of an arrangement to meet the defendant and bring him to the place where the alleged crime was committed; and the district attorney argued that the arrangement was made to bring the defendant for the purpose of procuring the abortion. *Held,* that, if there was direct evidence of his guilt from other circumstances in the case, evidence offered by the defendant to show that the arrangement was for another purpose was immaterial.

INDICTMENT under the Gen. Sts. *c.* 165, § 9, against Luke K. Blair for procuring an abortion upon Mary M. Wilson, on December 5, 1876, by reason of which she died; and against George Wilson, as an accessory before the fact. Trial in the Superior Court, before *Bacon*, J., who allowed a bill of exceptions in substance as follows:

The defendant Blair formerly resided in Pelham, where he had property, but at the time in question he resided in Holyoke. The defendant Wilson, the husband of Mary M. Wilson, lived in Pelham. It appeared that Blair came to the house of Wilson on December 4, 1876, in the afternoon, and stayed there until the following afternoon. There was evidence that the defendant Wilson arranged on December 1 to meet the defendant Blair at Amherst on December 4, and to bring him to Pelham, which was done; and the district attorney contended both in opening the case to the jury and in his argument, that the arrange-

ment was made on December 1, by the defendants, that Blair should come to Pelham, at the time mentioned, to procure the abortion.

The defendants introduced evidence tending to show that Blair had some buildings burned in Pelham, and that he was in Pelham on December 1, for the first time after the fire, and, as he was passing the house of Wilson, he saw Wilson in his door yard in conversation with one Peck; that he stopped and had a conversation with him, but did not get out of his carriage. The government did not rest the case against Blair upon the fact that a plan had been formed and agreed upon between the defendants, before Blair came to the house of Wilson, to procure an abortion upon Mrs. Wilson, but that, while Wilson was away, Blair and Mrs. Wilson came out from the bed-room and soon after Mrs. Wilson began to be sick, and the government contended that there was evidence other than above stated on which the jury might convict Blair, though they should acquit Wilson.

Wilson carried Blair to Amherst, on his return to Holyoke, towards night on December 5, having sold his horses with which he was to take Blair to Holyoke; and the defendant offered to show, by the evidence of Blair, Wilson and Peck, what was said by Blair and Wilson, and the arrangement which was made about Blair's coming to Pelham on December 4, and also to show the object of his visit to Pelham, and the arrangement which was made by Wilson to carry Blair from Pelham to Holyoke with a pair of horses belonging to Wilson, which Blair, at the request of Wilson, had talked with one Joseph Martin about buying. The defendant also offered to show by the evidence of Martin that Blair arranged with him to have Wilson come down with the horses on December 5, for him to look at them with a view of buying.

The judge excluded the above evidence, but allowed the defendants to testify that no arrangement was made by them that Blair should go to Pelham for the purpose of procuring an abortion. Both Blair and Wilson were allowed to testify, so far as they chose, to all that was done by them and each of them during the time that Blair was at the house of Wilson, and also that, when Blair came to the house of Wilson on December 4, he and Wilson expected he was going to spend the night with a

neighbor by the name of Stratton. And the defendant Blair was allowed to show that an arrangement had been made with that neighbor to stay over night with him.

The judge instructed the jury that, if an abortion was procured by Blair, and the defendant Wilson brought him to his house for the purpose of having an abortion produced, they should find Wilson guilty as an accessory before the fact. The jury acquitted Wilson, and returned a verdict of guilty against Blair; and he alleged exceptions.

*H. H. Bond*, for the defendant Blair.

*W. C. Loring*, Assistant Attorney General, for the Commonwealth.

AMES, J. The evidence that was excluded was offered to meet the argument of the district attorney that the defendants met for an unlawful purpose, and not in reply to any evidence on the part of the prosecution as to the purpose of the meeting. The indictment against Blair was not for going to Wilson's house for an unlawful purpose, but for perpetrating a crime when there. If there was direct evidence of his guilt, derived from other circumstances in the case, it would not be controlled or explained by proof that his original purpose in going there was in truth as harmless as he claims that it was. We cannot see, therefore, that he suffered any wrong in the exclusion of the evidence offered *Commonwealth* v. *Bowers*, 121 Mass. 45.

*Exceptions overruled.*